## Abraham Lipman

*v.*

## Elias Lowitz.

1. Composition agreement—*construction of.* A composition agreement should not receive a construction more comprehensive than the reasonable import of its language would signify, and should be limited in its effect to such matters as were within the contemplation and intention of the parties at the time of its execution.

2. An agreement by which a creditor agrees to take 25 per cent on each and every dollar that his debtor owes and is indebted to him, in full discharge and satisfaction of the several debts and sums of money that the debtor owes and stands indebted to him, does not affect any debts which may afterwards accrue to the creditor.

3. Where a creditor held several notes of his debtor, and indorsed one of them to a third party, and afterwards, and whilst said indorsed note belonged to the indorsee, made a composition agreement with his debtor, whereby he released and discharged him from all debts and sums of money then due and owing from such debtor to him, stating the aggregate amount of such indebtedness: *Held,* that this agreement would not affect the right of the creditor to collect from the debtor whatever sum he might afterwards have to pay, as indorser of the note so indorsed before the execution of the composition agreement.

4. Payment—*as to the mode.* And in such case it would not affect the right of recovery of such indorser as against the maker, that the former paid the note to the indorsee by giving his own note therefor instead of paying the money.

Appeal from the Circuit Court of Cook county; the Hon. Lambert Tree, Judge, presiding.

Mr. JOHN LYLE KING, for the appellant.

Mr. RUFUS KING, and Mr. A. C. STORY, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The principal ground relied upon by appellant to secure a reversal of the judgment is, that the circuit court erred in giving appellee's seventh instruction, which was as follows :

"The jury are instructed, that, if they believe, from the evidence, that the agreement of compromise read in evidence was entered into by the plaintiff, and that, at the time of such agreement being made and signed by him, there was no false or fraudulent representations made by the defendant concerning the amount of his liabilities or assets ; and even if the defendant carried out the agreement, can not prevent the plaintiff, Lowitz, recovering all the money he was obliged to pay as indorser of the defendant's notes, after the said agreement was made, if any such money he did pay.  So, if, at the time of the making of the said agreement, the notes of the the defendant, Lipman, or any or either of them, were held by third parties, and the plaintiff was obliged to and did pay them, by reason of his having indorsed them, and this payment was made by him after said agreement was made, then, in that case, the plaintiff is entitled to recover all that he so paid on the said notes."

In the summer of 1871, the appellant, being indebted to appellee in the sum of $6000, gave him his four promissory notes, two for $1500 each, one for $1000, and one for $2000. The $1500 note, that matured on the 11th day of October, 1871, was indorsed and transferred, before it became due, to the German National Bank, by appellee.

In the month of December, following, and while the German National Bank held as indorsee the $1500 note, appellant made a settlement with his creditors, and a composition

agreement was executed, which agreement contains the following:

"That we, the said several and respective creditors, shall and will accept, receive and take of and from the said Abraham Lipman, for each and every dollar that the said Abraham Lipman does owe and is indebted to us, the sum of twenty-five cents, in full discharge and satisfaction of the several debts and sums of money that the said Abraham Lipman does owe and stand indebted unto us."

This agreement was signed by appellee, and at the foot of his signature he wrote down his claim against appellant, at the sum of $4500.

The German National Bank, that held the $1500 note, did not become a party to the agreement.

In the month of January, 1872, after the execution of the composition agreement, appellee paid the German National Bank the amount due upon the $1500 note held by the bank, upon which he was indorser. The payment was made partly in cash and in part by appellee's own paper.

The position of appellant is, that the legal effect of the composition agreement discharged him from any future liability to appellee on the $1500 note.

It will be observed that the language used in the agreement is, that the twenty-five cents on the dollar, which appellant agreed to pay, was to be accepted in discharge and satisfaction of the several debts and sums of money that appellant was then owing to the parties who executed the agreement.

It does not, in terms or by implication, embrace causes of action or liabilities that might arise or be incurred in the future. We are aware of no authority that would sanction a construction of a contract of this character more comprehensive than a reasonable import of the language used would signify. And a composition agreement, like the one under consideration, should be limited in its effect to such matters as were within the contemplation and intention of the parties, at the time of its execution. *Butcher* v. *Butcher,* 1 Bos. & Pull. 113.

When the contract was made, appellant was not indebted to appellee upon the note. It was held and owned by the bank, and whatever amount of money appellant owed upon it, was due and owing from him to the bank.

It is true, appellee had indorsed the note, and as indorser might have been compelled to pay the indorsee the amount of the note. But that was by no means certain. Appellee's liability depended upon the insolvency of the maker, and, perhaps, the diligence which had been or should be used by the bank to enforce payment of the maker. At all events, when the composition agreement was made, the liability of appellee as indorser was not fixed, certain and definite. This being the case at the time the agreement was executed, appellee had no claim upon appellant on account of the $1500 note.

If, in the future, appellee should be required to pay the bank the note, as indorser, then, and not until that event had occurred, would he have any subsisting claim or demand on account of the note against appellant.

The manner in which appellee signed the agreement, is enough, of itself, to establish the fact that it was not within the intent of the contracting parties to include this note in the agreement. If such had been the intention, appellee's claim would have been put down at $6000. This, however, did not occur, but appellee's debt was stated upon the agreement to be $4500, thus leaving out the identical amount of the note which had been indorsed to the bank.

When, therefore, appellee, after the composition agreement had been made, was compelled, as indorser, to pay the note in question, a cause of action arose in his favor, not, perhaps, upon the note itself, but to recover so much money as he was required to pay; and this recovery could be had under the common counts of the declaration.

*Cuyler* v. *Cuyler*, 2 Johns. 186, was a case where the plaintiff held a note against the defendant, which he indorsed to a third party, and, while the note was so held, the plaintiff executed a contract to the defendant, the legal effect of which

was to relieve the defendant from all demands then existing. Subsequently, the plaintiff was required to pay the indorsed note, and it was held, that the cause of action had arisen subsequently to the execution of the release, and was not affected by it, and that the action for money paid would lie. See, also, *Crawford* v. *Swearington*, 15 Ohio, 264.

Appellant has cited two authorities to sustain his position. The first is Parsons on Contracts, page 713, where the author says, a "release, strictly speaking, can operate only on a present right, because one can only give what he has, and can only promise and give what he may have in future. Where one is now possessed of a distinct right, which is to come into effect and operation hereafter, a release, in words of the present, may discharge the right."

This authority does not, in any manner, help appellant's position. Appellee had no distinct right, so far as the note held by the bank was concerned, at the time the release was given, and hence it could not operate upon it, as we have heretofore shown.

The case of *Pierce* v. *Parker*, 4 Metc. 80, also cited, upon examination, will be found not to sustain appellant's position.

The agreement upon which the decision in the case last cited was predicated, was much broader than the one in the case at bar. It embraced all "claims, demands, actions, and causes of action." And it further appears, from the opinion, which is an important element, that the parties, at the time the release was executed, had in view the claim which formed the subject matter of the litigation.

These two important elements clearly distinguish the case cited from the one under consideration.

We are, therefore, satisfied, the instruction given is fully sanctioned by the authorities ; and appellant's second instruction, which in substance presents an opposite view, was properly refused.

It is also urged, that the judgment can not be sustained, for

the reason that the appellee had not paid, in money, the entire amount of the note held by the bank.

The proof upon this point is, that appellee had paid a portion of the note in cash, and gave his own paper for the balance, and lifted the note.

It is immaterial, so far as this action is concerned, in what manner the note was paid. A payment in merchandise, or by appellee's own paper, would be as effectual as a payment in cash.

As the record discloses no substantial error, the judgment will be affirmed.

*Judgment affirmed.*